UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

| | |
|---|---|
| EUGENE NOLAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 4:11-CV-5 |
| v. ) | |
| ) | *Mattice / Lee* |
| COMMISSIONER OF SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**

Plaintiff Eugene Nolan ("Plaintiff") was denied disability insurance benefits ("DIB") and supplemental security income ("SSI") by the Commissioner of Social Security ("Commissioner" or "Defendant"), and he now appeals that denial.[1] Plaintiff contends the Administrative Law Judge ("ALJ") (1) improperly discounted or rejected the opinion of his treating physician and failed to explain what weight, if any, he gave the treating physician's opinion and (2) improperly evaluated Plaintiff's credibility. Plaintiff has moved for judgment on the administrative record, seeking reversal of the Commissioner's decision and an award of benefits or a remand [Doc. 13]. Defendant, in response, has moved for summary judgment [Doc. 19]. Because the ALJ erred in applying the treating source rule, I **RECOMMEND** that: (1) Plaintiff's motion for judgment on the administrative record [Doc. 13] be **GRANTED**; (2) Defendant's motion for summary judgment [Doc. 19] be **DENIED**; (3) the decision of Commissioner be **REVERSED**; and (4) this action be **REMANDED**.

---

[1] This action is brought pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), which, respectively provide for judicial review of the final decision of the Commissioner denying DIB and SSI benefits.

## I. ADMINISTRATIVE PROCEEDINGS

In September 2007, Plaintiff applied for DIB and SSI benefits, alleging disability since September 15, 2003 due to pain in his back, shoulder, neck, feet and legs and carpal tunnel syndrome (Tr. 14, 73, 123, 409). After Plaintiff's claim was denied initially and upon reconsideration, he requested a hearing, which was held on October 20, 2009 (Tr. 52, 54, 58, 60, 404). Post-hearing, a supplemental examination was conducted by Donita Keown, M.D. in December 2009, who found Plaintiff could engage in most heavy work (Tr. 18, 130-39). By decision dated April 9, 2010, the ALJ determined that Plaintiff was not disabled because he was capable of light exertion generally, with some additional restrictions, and could perform a significant number of jobs despite his limitations and impairments (Tr. 14-22). In November 2010, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final, appealable decision of the Commissioner (Tr. 2-5, 9). This matter is now ripe for judicial review.

## II. DISABILITY DETERMINATION PROCESS

The Social Security Administration determines eligibility for disability benefits by following a five-step process. 20 C.F.R. § 404.1520(a)(4)(i-v). The process provides:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment-i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities-the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

> 5) If the claimant can make an adjustment to other work, the claimant
> is not disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647 (6th Cir. 2009). The claimant bears the burden of proof at the first four steps. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

## III. FACTUAL BACKGROUND AND ALJ'S FINDINGS

### A. Medical Records

Plaintiff suffered a work-related injury to his back in 2003.[2] A neurosurgeon, Peter E. Boehm, M.D., examined Plaintiff in October 2004 and found no motor or sensory deficit, no atrophy, less pain with straight leg raising on the right than left, and reasonable range of motion in the back, with pain worse on flexion than extension [Doc. 20 referring to Doc. 14-1][3]. Dr. Boehm noted an MRI taken in October 2003 showed two central disc ruptures and degenerative changes in Plaintiff's back [*id.*]. An updated MRI in November 2004 showed no significant change since the 2003 MRI, finding a broad-based disc herniation with mild compression of the nerve root and a small disk protrusion (Tr. 400). Plaintiff complained of neck and shoulder pain and a February 2005 CT scan showed epidural ossific densities (suspected to be either bone spurring or calcified disc fragment) (Tr. 395). Later examination by Dr. Boehm in February 2005 indicated Plaintiff's neck symptoms were better but his back pain continued (Tr. 391).

At various times in 2005 and 2006, Dr. Boehm noted on physical examinations that Plaintiff had muscle spasm, scoliosis with convexity to the right related to his back condition (Tr. 387), and

---

[2] Plaintiff has not raised any substantive issues concerning his mental impairments so this summary will focus on Plaintiff's physical impairments.

[3] Although not part of the Administrative Record filed with the Court, both parties referenced this October 4, 2004 medical record from Dr. Boehm, which was filed as an attachment to Plaintiff's brief.

3

was flexed forward (Tr .386). Dr. Boehm recommended intradiscal decompression ("IDD") therapy, but no surgical intervention (Tr. 383-90). Plaintiff's worker's compensation insurance company would not pay for IDD therapy at the time (Tr. 384). A July 2006 MRI of Plaintiff's low back again showed no significant change compared to the 2003 MRI, finding mild or minimal changes with no evidence of nerve root compromise or significant spinal stenosis (Tr. 380). Plaintiff had decreased range of motion and back spasms in February 2007 (Tr. 383), and by June 2007, Plaintiff reported severe pain (Tr. 381-82).

In July 2007, Plaintiff was referred to Bill M. Smith, M.D. who began IDD therapy, which continued until September 2007 (Tr. 348-75). Plaintiff reported his pain was the same, but his posture was improved as a result of the IDD treatment (Tr. 348). In September 2007, Dr. Boehm noted that Plaintiff was "definitely better at this point following decompression treatment by Dr. Smith." (Tr. 378). He noted that while Plaintiff's discomfort and stiffness would never go away, Plaintiff was walking more erect (Tr. 378). Dr. Boehm opined that Plaintiff should never return to heavy work (Tr. 378). In October 2007, Dr. Smith completed a "range of motion" form, noting a range of motion of about 50% of normal in Plaintiff's lumbar spine, that Plaintiff was better than when he began IDD therapy, and that Plaintiff said he knew his back would "never be normal." (Tr. 343-45).

In November 2007, Denise Bell, M.D. reviewed Plaintiff's medical records at the request of the state agency and opined that Plaintiff could perform light work with occasional postural limitations (Tr. 323-27).

In January 2008, Plaintiff reported to Dr. Boehm that he had started to have recurrent pain problems a month or so after completion of his IDD therapy (Tr. 401). On examination, Plaintiff

4

had a moderately stiff back with decreased range of motion (Tr. 401). Plaintiff did not want to pursue additional IDD therapy at that time, although it was recommended by Dr. Boehm, and instead requested pain medication. Dr. Boehm opined surgery would not be helpful and he referred Plaintiff to a pain management specialist, Dr. Mary McDonald, at Plaintiff's request (Tr. 401).

On April 28, 2008, Plaintiff was seen by Dr. McDonald who noted Plaintiff stood bent about ten degrees forward at the waist and had an antalgic gait, decreased low back range of motion, moderate to severe tenderness in the low back, a sensory decrease, and painful straight leg raising when lying down, but the examination showed no muscle atrophy, normal muscle tone and good strength, normal reflexes, and a negative seated straight leg raising test (Tr. 230-35). Dr. McDonald concluded Plaintiff had chronic pain syndrome (Tr. 234). Dr. McDonald also noted that Plaintiff would not be pain free but, with appropriate medications and effort, Plaintiff should be able to resume physical activity and regain some quality of life (Tr. 235).

In May 2008, Reeta Misra, M.D. reviewed Plaintiff's medical records at the request of the state agency and opined Plaintiff could perform light work with occasional postural limitations (Tr. 273-78).

Dr. McDonald continued to treat Plaintiff on a monthly basis and noted his pain was fairly well controlled (Tr. 203-29). In August 2008, Dr. McDonald recommended that Plaintiff not be involved in heavy labor, but noted he should be able to return to mild-moderate physical activity as his back strength improved (Tr. 218). In January 2009, and the following months, however, Plaintiff reported his pain was worsening (Tr. 195-96, 204-09).

On May 6, 2009, Dr. McDonald opined that Plaintiff could sit two to four hours per day and stand or walk for two to four hours per day, up to 20 minutes at a time; could occasionally lift up

5

to ten pounds and infrequently lift up to 20 pounds; and would require bed rest one to two hours per day (Tr. 199). She opined that Plaintiff would need extra rest breaks and his pain and medication would affect his attention and concentration (Tr. 200). Dr. McDonald estimated that Plaintiff would have a reasonable need to be absent from work four to six times per month (Tr. 201).

During examination on May 13, 2009, Dr. McDonald noted Plaintiff's pain was fairly well controlled (Tr. 196) and in June, Dr. McDonald noted Plaintiff's pain continued to be fairly well controlled but he also had back spasms (Tr. 193-94). Dr. McDonald noted Plaintiff's reports of worsening pain in July and August 2009, with problems developing in Plaintiff's left ankle (Tr. 189-92). An EMG study showed evidence of motor neuropathy in Plaintiff's left leg (Tr. 220) and Dr. McDonald noted Plaintiff had no deep tendon reflex in his left ankle (Tr. 190). On July 10, 2009, Dr. McDonald noted a "definite drop in left ankle." (Tr. 192). By September 2009, Dr. McDonald again noted Plaintiff's back pain was fairly well controlled but he was having more knee pain and stiffness (Tr. 187-88).

Post-hearing, Plaintiff submitted to a consultative examination by Dr. Keown, apparently at the request of the ALJ, and she found Plaintiff had "significant credibility issues" (Tr. 134). Dr. Keown did not see back spasms or note gait abnormalities (Tr. 132-33). Dr. Keown noted that Plaintiff guarded the range of motion of his neck significantly but, while distracted, he showed rotation of 70 degrees right and left (Tr. 132). In his mid-to-low back, she noted Plaintiff preferred to remain flexed, but while distracted he demonstrated negative straight leg raise on his left and right (Tr. 132). He was also able to walk without an assistive device, limp, or other abnormalities, and could lift on his toes and walk on his heals (Tr. 133). Dr. Keown opined that Plaintiff could frequently lift 21 to 50 pounds and occasionally lift 51 to 100 pounds; could sit, stand, and walk for

6

eight hours per day; did not require the use of a cane; and had no other significant restrictions (Tr. 134-39).

### B. Hearing Testimony

At the hearing, Plaintiff testified to symptoms similar to those reported in his medical records (Tr. 409-14). In summary, Plaintiff testified that he could not work due to chronic pain in his neck, back, shoulder, legs, and feet (Tr. 409). As a result, he normally lies down a couple hours per day (Tr. 412) and can sit or stand for only about 35 minutes at a time before needing to change positions (Tr. 410-11). Plaintiff was asked about the outcome of his IDD therapy and whether it helped with his pain and Plaintiff responded, "It seemed like it did to start with, but in the long run no sir, it did not." (Tr. 415).

The ALJ asked a vocational expert ("VE") to consider a person with Plaintiff's vocational characteristics who had pain in his neck, shoulder, back, and hip radiating down into his foot, but could perform simple, light work with alternate sitting or standing in about 30 to 45 minute intervals, no frequent bending or stooping, and no more than superficial contact with others (Tr. 418-19). The VE testified that such a person could perform light, unskilled work at a variety of jobs (Tr. 419). The VE also testified, however, that if Plaintiff's testimony was accepted, Plaintiff would be unable to work (Tr. 420-21).

### C. ALJ's Findings

At step one, the ALJ found that Plaintiff was not working (Tr. 16). At step two, the ALJ found that Plaintiff had these severe impairments: chronic neck, right shoulder, left leg, and back pain (Tr. 16). At step three, the ALJ found that none of Plaintiff's impairments met the criteria of any listed, presumptively disabling impairment (Tr. 16-17). Next, the ALJ found Plaintiff retained

the RFC to perform light work with some restrictions (Tr. 17). With this RFC, the ALJ found that Plaintiff could not perform any of his past work at step four (Tr. 20). The ALJ relied on the VE's testimony to conclude at step five that Plaintiff could perform other work (Tr. 20-21). Accordingly, he found Plaintiff was not disabled (Tr. 21).

## IV. ANALYSIS

Plaintiff challenges the ALJ's assessment of his credibility and the ALJ's application of the treating source rule. Specifically, Plaintiff argues Dr. McDonald's opinion was entitled to controlling weight and, even if it was not entitled to controlling weight, the ALJ erred by implicitly rejecting Dr. McDonald's opinion without good reason and without discussing how much weight, if any, was given the opinion.

### A.    Standard of Review

A court must affirm the Commissioner's decision unless it rests on an incorrect legal standard or is unsupported by substantial evidence. 42 U.S.C. § 405(g); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (quoting *Walters*, 127 F.3d at 528). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Furthermore, the evidence must be "substantial" in light of the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its weight." *Id.* (internal quotes omitted). If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The court may not re-weigh evidence, resolve

8

conflicts in evidence, or decide questions of credibility. *Garner*, 745 F.2d at 387. The substantial evidence standard allows considerable latitude to administrative decisionmakers because it presupposes there is a zone of choice within which the decisionmakers can go either way, without interference by the courts. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

The court is under no obligation to scour the record for errors not identified by the claimant, *Howington v. Astrue*, No. 2:08-CV-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and arguments not raised and supported in more than a perfunctory manner may be deemed waived, *Woods v. Comm'r of Soc. Sec.*, No. 1:08-CV-651, 2009 WL 3153153, at *7 (W.D. Mich. Sep. 29, 2009) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)) (noting that conclusory claim of error without further argument or authority may be considered waived). Nonetheless, the court may consider any evidence in the administrative record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).

### B. Assessment of Plaintiff's Credibility

Plaintiff challenges the ALJ's assessment of his credibility, particularity with respect to his subjective complaints of pain. At the hearing, Plaintiff described symptoms that were severe enough to prevent him from working. The ALJ acknowledged that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms;" but he nonetheless found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms were "not credible" to the extent that they were inconsistent with his RFC finding—i.e., that Plaintiff was able to perform a limited range of light work (Tr. 18).

Where an ALJ's credibility assessment is fully explained and not at odds with uncontradicted

9

evidence in the record, it is entitled to great weight. *See King v. Heckler*, 742 F.2d 968, 974-75 (6th Cir. 1984). The ALJ cannot base his credibility finding on intuition, but must give "specific reasons for the finding on credibility, supported by the evidence in the case record," which are "sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the [ALJ] gave to the [claimant's] statements and the reasons for that weight." Social Security Ruling ("SSR") 96-7p (1996); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247-48 (6th Cir. 2007). "Consistency between a claimant's symptom complaints and the other evidence in the record tends to support the credibility of the claimant, while inconsistency, although not necessarily defeating, should have the opposite effect." *Kalmbach v. Comm'r of Soc. Sec.*, 409 F. App'x 852, 863 (6th Cir. 2011). According to agency regulations, the ALJ must consider a claimant's credibility in light of all the evidence in the record, including the claimant's own statements regarding the nature and severity of his symptoms, his daily activities, his prior work record, his physicians' medical diagnoses, prognoses, and opinions, his medications and other treatments, and any other relevant factors. SSR 96-7p.

      The ALJ's stated reasons for his credibility decision were Dr. Keown's observations that Plaintiff performed better on his physical tests when he was unaware he was being tested and her opinion that there were credibility issues, Dr. McDonald's noted conflicts concerning Plaintiff's degree of pain and limitations, and Plaintiff's ability to perform a variety of daily activities (Tr. 18-20). I **FIND** the ALJ's reasoning in this respect provides support for his credibility assessment. Considering the ALJ's explained his credibility finding and his stated reasons are not at odds with uncontradicted evidence in the record, and in light of the deference to which such findings are entitled, I **CONCLUDE** that the credibility assessment was supported by substantial evidence in

10

view of the record as a whole.

      **C.**      **Weight Given to Medical Opinions**

Dr. McDonald, the pain management specialist who treated Plaintiff from April 2008 through September 2009, offered an opinion of Plaintiff's functional abilities that would have precluded him from working. The ALJ either rejected or discounted Dr. McDonald's opinion and gave more weight to the state agency doctors' opinions, which were consistent with light work, and to Dr. Keown's opinion, which was consistent with a range of heavy work. The ALJ failed to state what weight, if any, he gave Dr. McDonald's opinion.

The contours of the so-called treating physician rule are well drawn. An ALJ is obligated to give "controlling weight" to a treating physician's opinion so long as it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(d)(2). Even if not entitled to controlling weight, a treating physician's opinion is entitled to weight commensurate with the length of the treating relationship and the frequency of examination, the nature and extent of the treating relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and the specialization of the treating source. *Id.* Furthermore, when the ALJ discounts a treating physician's opinion, he is obligated to give "good reasons" for doing so. *Rogers*, 486 F.3d at 242 (quoting SSR 96-2p). Those reasons must be "supported by the evidence in the case record" and "sufficiently specific to make clear to any subsequent reviewers the weight [given] to the . . . opinion and the reasons for that weight." *Id.*

The United States Court of Appeals for the Sixth Circuit recently reiterated that remand may be required when the ALJ fails to specify the weight afforded to a treating physician's opinion and

11

fails to provide good reasons for giving the opinion an unspecified weight that is less than controlling. *Cole v. Astrue*, ___ F.3d ___, 2011 WL 5456617, at *5 (6th Cir. Sept. 22, 2011). The *Cole* court stated "[t]his Court has made clear that '[w]e do not hesitate to remand when the Commissioner has not provided "good reasons" for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth the reasons for the weight assigned." *Id.* at *6 (quoting *Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009)).[4] In *Cole*, the Sixth Circuit again recognized that a violation of the "good reasons" rule could only be harmless error under three circumstances: where the treating source opinion was patently deficient such that it could not be credited; where the Commissioner adopted the opinion of the treating source or made findings consistent with that opinion; or where the Commissioner otherwise met the goal of the treating source regulation, 20 C.F.R. § 404.1527(d)(2). *Id.* (quoting *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010)). While each case must be evaluated to determine if the required procedures have been appropriately followed, an ALJ's failure to specify the weight afforded to a treating physician could, on its own, provide sufficient grounds for remand. *Cole*, 2011 WL 5456617, at *6.

---

[4] Like in *Cole*, the Sixth Circuit has remanded other cases when the ALJ failed to appropriately analyze and specify the weight afforded to treating physician opinions. *See*, *e.g.*, *Sawdy v. Comm'r of Soc. Sec.*, No. 09-2291, 2011 WL 3805638, at *2-3 (6th Cir. Aug. 29, 2011) (remand even though substantial evidence might have supported the decision because the ALJ gave no reason for deeming one treating physician's opinion unworthy of controlling weight and did not specify the weight given other treating physicians' opinions); *Karger v. Comm'r of Soc. Sec.*, 414 F. App'x 739, 751-52, 755 (6th Cir. 2011) (remand necessary where ALJ failed to mention multiple treating physician opinions and failed to specify weight given to the opinions, if any)*; Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407-10 (6th Cir. 2009) (remand necessary because ALJ rejected a treating physician opinion without explaining the weight afforded the opinion and it was not harmless error); *see also Germany-Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 777-78 (6th Cir. 2008) (ALJ did not specify the weight given to one treating physician opinion or explain why the physician's determination of disability was discounted).

Here, the ALJ's decision indicates the ALJ did not "place full credibility" on Dr. McDonald's opinion because it was based on the Plaintiff's subjective complaints and not supported by objective evidence, and because Dr. McDonald noted conflicts concerning Plaintiff's degree of limitations and pain (Tr. 19-20). Because it is undisputed that Dr. McDonald was a treating source and the ALJ failed to specify the weight given her opinion, if any, the pertinent issue before the Court is whether this breach of the treating source rule is merely harmless error. The first two circumstances that might excuse the error do not apply as Dr. McDonald's opinion is neither so patently deficient as to make it incredible nor is her opinion or findings implicitly adopted. Instead, the Commissioner argues the error is excused as harmless in this case because the goal of the treating source regulation is satisfied despite the ALJ's non-compliance.

What is the goal of the treating source regulation? According to the Sixth Circuit in *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004), the goal of the good reasons aspect of the rule is to ensure that a claimant is not left bewildered by an ALJ's conclusion that his doctor is wrong about his impairments. Of course, the good reasons requirement also enables the reviewing court to fulfil its role of judicial review. In *Cole*, the Sixth Circuit further noted that "[i]t may be true that, on remand, the Commissioner reaches the same conclusion . . . while complying with the treating physician rule and the good reasons requirement; however, [Plaintiff] will then be able to understand the Commissioner's rationale and the procedure through which the decision was reached." *Id.* at *7.

In the instant matter, the ALJ never explicitly stated how much, if any, weight he gave Dr. McDonald's opinion. Instead, the ALJ stated he could not "give great weight" to her opinion because the objective evidence does not substantiate "such severe pain and limitations as [Plaintiff]

13

continues to allege during his visits with Dr. McDonald" and that he "cannot place full credibility on the report of the treating physician Dr. McDonald, particularly since this physician also noted conflicts concerning the degree of limitations and pain of [Plaintiff's] back" (Tr. 20). Plaintiff states the RFC was a total rejection of Dr. McDonald's opinion. Although the Commissioner's initial brief argued the ALJ "rejected" Dr. McDonald's opinion [Doc. 20 at PageID #: 72], the Commissioner's final brief argues that while the ALJ did not explicitly state the weight given Dr. McDonald's opinion, it is implicit in the RFC finding. It appears the Commissioner's position may be that the opinion was actually given some weight because he argues the ALJ's RFC provided good reasons for not giving Dr. McDonald's opinion any weight *beyond the restrictions in the RFC*. [See Doc. 24 at PageID #: 100]. However, the Commissioner never identifies what he contends is the allegedly implicit weight given to Dr. McDonald's opinion, if any, nor does he explain why all, or portions, of Dr. McDonald's opinion may have been given none, some, or something-in-between weight.

The ALJ noted Dr. McDonald's opinion was based, at least in part, on Plaintiff's subjective complaints, which he found not fully credible. The ALJ also noted that the objective evidence did not always substantiate the severity of the pain and limitations claimed by Plaintiff. The ALJ noted "inconsistencies" found by Dr. McDonald who observed that Plaintiff's symptoms were out of proportion to the legions found on MRI, but Dr. McDonald also said the symptoms were consistent with medical records dating back to Plaintiff's treatment with Dr. Boehm. The ALJ also noted the credibility issues raised in Dr. Keown's report. When a treating physician's opinion is based on a claimant's self reports which are themselves not credible, it is not error to assign little weight to the opinion. *See Vorholt v. Comm'r of Soc. Sec.*, 409 F. App'x 883, 889 (6th Cir. 2011) (affirming

14

rejection of treating physician's opinion which relied on the "false record" supplied by the claimant). But here, Dr. McDonald did not blindly accept Plaintiff's complaints, she questioned them and noted an inconsistency, but still concluded Plaintiff had limitations that would preclude work.

Although the ALJ may have properly concluded Dr. McDonald's opinion is not due controlling weight, he did not address the weight given her opinion in light of the requirement that her opinion is still entitled to substantial deference commensurate with "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source." 20 C.F.R. § 404.1527(d)(2); SSR 96-2p; *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 192 (6th Cir. 2009). The ALJ did not explain how he weighted her opinion or why he rejected or discounted all or parts of her opinion to come up with a RFC for light work, consistent with the opinions of the two state agency reviewing physicians. While the ALJ found the evaluating physician's opinion that Plaintiff could do a range of heavy work "noteworthy" (Tr. 17), he does not explain why he rejected her opinion that Plaintiff could perform a range of heavy work, but yet relied on her opinion, if he did, to reject or discount Dr. McDonald's opinion. Instead, the Plaintiff, and the reviewing court, are left to speculate, contrary to the purpose of the good reason requirement.

A failure to give good reasons may be considered harmless only if the error is "a harmless *de minimis* procedural violation." *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009) (citing *Wilson*, 378 F.3d at 547). I **FIND** the ALJ's error is not a harmless *de minimis* procedural violation as the ALJ did not meet the goal of the treating source regulation when he failed to comprehensively set forth the reasons for the weight, if any, he assigned to Dr. McDonald's opinion.

15

The ALJ's failure to specify the weight, if any, afforded to Dr. McDonald's opinion in this case is sufficient grounds for remand. Plaintiff, however, is cautioned that the Commissioner may reach the same conclusions on remand while complying with the treating source requirements.

## V. CONCLUSION

Having carefully reviewed the administrative record and the parties' pleadings, I **RECOMMEND:**[5]

    (1)    Plaintiff's motion for judgment on the administrative record [Doc. 13] seeking remand under Sentence Four of 42 U.S.C. § 405(g) be **GRANTED**.

    (2)    Defendant's motion for summary judgment [Doc. 19] be **DENIED**.

    (3)    The Commissioner's decision denying benefits be **REVERSED** and **REMANDED** pursuant to Sentence Four of 42 U.S.C. § 405(g) for action consistent with this Report and Recommendation.

                                           s/ *Susan K. Lee*
                                           SUSAN K. LEE
                                           UNITED STATES MAGISTRATE JUDGE

---

[5] Any objections to this report and recommendation must be served and filed within 14 days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).